## A11A0181. BASS v. THE STATE.
(710 SE2d 818)

ELLINGTON, Chief Judge.

A Crisp County jury found Gary Bass guilty beyond a reasonable doubt of possession of marijuana with intent to distribute, OCGA § 16-13-30 (j) (1), and possession of marijuana with intent to distribute within 1,000 feet of a housing project, OCGA § 16-13-32.5 (b). He appeals pro se from the denial of his motion for new trial, contending that the evidence was insufficient to support his convictions, that the prosecutor knowingly presented perjured testimony, and that he

received ineffective assistance of trial counsel. He also claims that the trial court abused its discretion in denying his request for a continuance of the hearing on his motion for new trial. For the following reasons, we affirm.

1. In support of his claim that the evidence was insufficient to support his convictions, Bass asserts that the evidence against him was uncorroborated and contradicted by the testimony of defense witnesses. Specifically, Bass complains that none of the State's witnesses corroborated the testimony of the officer who arrested him and who subsequently discovered four packages of marijuana and a money bag inside his truck. He also claims that the officer's testimony regarding where the officer apprehended him was contradicted by the testimony of his defense witnesses. Regardless whether Bass' contentions are true, however, they do not demonstrate that the evidence was insufficient to support his convictions.

(a) When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. Id. In fact, "[a] jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it." (Citation and punctuation omitted.) *Bray v. State*, 294 Ga. App. 562, 563 (1) (669 SE2d 509) (2008).

In this case, a Crisp County deputy sheriff testified that, on October 29, 2008, he was on patrol in Cordele, looking for individuals with outstanding arrest warrants, when he saw Bass driving a red Dodge pickup truck. The officer had known Bass for approximately 15 years and thought that there were outstanding warrants for his arrest. The officer confirmed that there were outstanding warrants for Bass, but, because he did not want to stop Bass without the assistance of other officers, he attempted to follow Bass' truck while notifying officers in the area by radio to be on the lookout for a red Dodge pickup truck driven by Bass.

A second Crisp County deputy sheriff testified that, while on patrol in an unmarked vehicle that day, he heard the radio transmission about Bass and his truck. The officer knew Bass and was aware that there were outstanding warrants for his arrest. Shortly thereafter, the officer saw a red pickup truck parked in an alley, and he saw Bass standing on the porch of a nearby house and holding a white plastic bag. The officer watched as Bass got back into his truck

and drove away. After notifying other officers that he had found Bass, the officer followed Bass' truck. A few minutes later, Bass parked his truck in the driveway of a house and, as he started to get out, the officer approached the driver's side of the truck. According to the officer, he immediately smelled a strong odor of raw marijuana coming from inside the truck. The officer walked Bass to the back of the truck, handcuffed him, and placed him under arrest. After searching Bass incident to the arrest, the arresting officer decided to search Bass' truck due to the odor of marijuana. On the front passenger's seat of the truck, in plain view, the officer observed the white plastic bag he had seen Bass carrying to the truck earlier. Inside the bag were four plastic bags of marijuana, weighing a total of 92.3 grams or about one ounce per bag, and a money bag containing approximately $2,300.

In the meantime, while the second officer was in the process of arresting Bass, the officer who had initially seen Bass driving through Cordele and who had issued the radio alert arrived at the scene of Bass' arrest. The officer witnessed the search of Bass' truck by the arresting officer.

Defense counsel thoroughly cross-examined both officers about their observations that morning and the specific routes each took while pursuing Bass, from the time Bass was first observed through the time of Bass' arrest, using maps and pictures to test the accuracy of the officers' memories and to address any inconsistencies in their testimony.

After the State rested, defense counsel called three witnesses to testify on Bass' behalf. Tonya Collier, Bass' sister-in-law, testified that she — not Bass — was the person driving Bass' truck while the officer was following it, just before the truck stopped and parked in the driveway of a house. According to Collier, she did not know where Bass was when she parked his truck, but, after she went into the house, she saw the officer apprehend Bass on the side of the house, not as Bass exited the truck, as the officer had testified. Collier testified that the officer walked Bass to the back of the truck and handcuffed him, then demanded that she give him the keys to the truck, which she did. Collier claimed that she never saw a white plastic bag on the seat of Bass' truck.

In addition to that evidence, two other defense witnesses testified that they were in the immediate area of Bass' arrest and saw what happened from the time Bass' truck was parked in the driveway until Bass was arrested; their versions of the events were basically consistent with Collier's. During cross-examination of the latter two defense witnesses, the State elicited testimony that Bass had approached both witnesses after his arrest and had asked them to write out statements for him about what they saw happen just

before he was arrested.

Then, after the defense rested, the State called a rebuttal witness, who testified that Bass had given him a printed statement and asked him to copy the statement in his own handwriting and to sign it. According to the statement, the rebuttal witness had seen Collier driving a red pickup truck on the morning of, and in the same area of, Bass' arrest, and Collier had waved to him. The rebuttal witness admitted, however, that, contrary to his written statement, he did not actually see who was driving the red truck. Moreover, the witness admitted that he was not sure the truck he saw even belonged to Bass. The witness explained that Bass had specifically told him to write that he had seen Collier driving Bass' truck that morning and that he did so, even though it was not true, because he was trying to help Bass, who was his friend.

Ultimately, given the jury's finding that Bass was guilty beyond a reasonable doubt of the offenses for which he was charged, it appears that the jury accepted "that version of the events most unfavorable to [Bass] . . . after hearing all of the evidence and resolving the credibility of all of the witnesses." (Citation and punctuation omitted.) *Burgess v. State*, 276 Ga. 185, 187 (3) (576 SE2d 863) (2003). See *Lawson v. State*, 155 Ga. App. 704 (272 SE2d 567) (1980) (Although the testimony of the defendant and two other defense witnesses contradicted the State's witnesses' testimony regarding the defendant's involvement in a drug sale, the jury chose to believe the State's witnesses, and their testimony was sufficient to support his conviction.). Because the jury was solely authorized to make such determinations, there was no error.

(b) Moreover, even if the officer's testimony was not corroborated by other evidence, "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. See *Hammontree v. State*, 283 Ga. App. 736, 737 (1) (642 SE2d 412) (2007) (The child molestation victim's testimony alone sufficed to establish the elements of the crime charged.).

(c) Bass also complains that the State failed to present sufficient evidence to prove that the substance found inside the white plastic bag was, in fact, marijuana, because the State failed to present expert testimony on the issue. The trial transcript, however, shows that, at the time of Bass' arrest, the officer who discovered the substance was certified to recognize the odor of marijuana and to identify and test marijuana. According to the officer, the day after Bass' arrest, he weighed the substance, examined it under a microscope, and performed two chemical tests on the substance; each time the substance tested positive for marijuana. Further, the officer was subject to cross-examination by defense counsel. Therefore, even though the officer had not been qualified as an expert at trial, his

testimony was admissible to prove that the substance was marijuana. It was then for the jury to decide the weight and credibility they should give to his testimony. See *Madge v. State*, 245 Ga. App. 848, 852 (3) (b) (538 SE2d 907) (2000) (Since questions of weight and credibility of witness testimony are for the jury, it would have been improper to instruct the jury that they should afford less credibility to the testimony of the State's witness, who testified that a certain substance was marijuana, simply because the witness was not qualified as an expert.).

Accordingly, Bass' insufficient evidence claims are not supported by the record or applicable authority. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001). We conclude that the evidence presented, as recounted above, was sufficient for a rational factfinder to find Bass guilty beyond a reasonable doubt of the offenses for which he was charged. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B).

2. Bass contends that the trial court erred in rejecting his claim that his constitutional rights were violated at trial, based upon his assertions that the two Crisp County sheriff deputies gave "substantially misleading" and "perjurious" testimony "at the behest of the prosecution." Beyond claiming that the officers lied about the circumstances leading to his arrest and the search of his truck, however, Bass has failed to cite to any affirmative evidence that shows the officers perjured themselves while testifying. Further, as shown above, the trial transcript shows that Bass' trial counsel thoroughly cross-examined both officers about their actions and observations prior to and during the arrest and the search.

Under these circumstances, Bass has failed to show that the officers perjured themselves, that the State knowingly used their perjured testimony, or that the presentation of perjured testimony led to his wrongful conviction and the violation of his constitutional rights. *Hampton v. State*, 279 Ga. 625, 628 (8) (619 SE2d 616) (2005); *Burgess v. State*, 276 Ga. at 187 (3); *Stevenson v. State*, 272 Ga. App. 335, 342 (3) (f) (612 SE2d 521) (2005).

3. Bass complains that the trial court erred in ruling against him on his claim of ineffective assistance of trial counsel. Bass raised this claim in an amended motion for new trial that he presented at the beginning of the motion hearing. The transcript of the hearing shows that he did not subpoena his trial counsel to appear and testify at the hearing, nor did he testify at the hearing, call any other witnesses or submit any evidence in support of his motion.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). When the defendant does not call his trial counsel to testify at the hearing on the motion for new trial in order to explain why he or she acted, or failed to act, during trial, it is extremely difficult to overcome this presumption. *Jones v. State*, 279 Ga. 854, 855 (2) (622 SE2d 1) (2005); see also *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002).

"As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). "The decisions on which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client." (Citation and punctuation omitted.) *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2003). Ultimately, "[d]eciding what evidence to present or to forego in defending a client charged with a crime is a matter of strategy and tactics." (Citation omitted.) *Nichols v. State*, 281 Ga. 483, 485 (2) (a) (640 SE2d 40) (2007). "Whether an attorney's trial tactics [were] reasonable is a question of law, not fact." (Citation and punctuation omitted.) *Moreland v. State*, 263 Ga. App. at 588 (4). When assessing the reasonableness of counsel's actions, courts must evaluate counsel's performance from his or her perspective at the time of trial. *Grier v. State*, 273 Ga. at 365 (4). Finally, when this Court reviews a trial court's ruling on an ineffective assistance claim on appeal, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. at 76.

(a) Bass contends that his counsel's performance was deficient because he failed to file a motion to suppress evidence, specifically, the four bags of suspected marijuana that he claims were illegally seized from his truck. The mere failure to file a suppression motion, however, does not necessarily constitute ineffective assistance of counsel. *Mayes v. State*, 229 Ga. App. 372, 373 (1) (494 SE2d 34)

(1997). To prevail on this claim, the defendant must make a strong showing that, if his lawyer had filed a motion to suppress, the trial court would have granted it. Id.

Bass' argument that the evidence should have been suppressed (and would have been suppressed had counsel filed a motion) is premised *solely* upon his contention that the two Crisp County sheriff deputies lied at trial about their observations and the events leading to the seizure of the marijuana. Because we have found, in Division 2, supra, that Bass has failed to show that the officers lied under oath during his trial, Bass is unable to show that, if defense counsel had filed a motion to suppress on this basis, the trial court would have granted it. *Mayes v. State*, 229 Ga. App. at 373 (1). Therefore, he cannot prevail on this ineffective assistance claim.

(b) Bass claims that his counsel was ineffective for failing to move for a mistrial when one of the officers perjured himself by testifying that he smelled the odor of raw marijuana coming from Bass' truck when he approached the vehicle. Pursuant to our decision in Division 2, supra, this ineffectiveness claim lacks merit. See *Stevenson v. State*, 272 Ga. App. at 342 (3) (f) (The defendant could not prevail on his claim that his trial counsel was ineffective in failing to object when, according to him, the prosecution knowingly presented perjured testimony and tampered with the jury, because the defendant presented absolutely no evidence to support the allegations of prosecutorial misconduct.).

(c) Bass argues that his counsel was ineffective when he failed to employ, or request funds from the court to employ, an expert witness to challenge the officer's testimony that he smelled the odor of raw marijuana emanating from Bass' truck. As noted above, however, the decisions of which witnesses to call and what evidence to present to the jury are matters of trial strategy and tactics. *Nichols v. State*, 281 Ga. at 485 (2) (a); *Moreland v. State*, 263 Ga. App. at 588 (4). Because Bass did not call his trial counsel to testify at the hearing on the motion for new trial so that counsel could explain why he did not attempt to employ an expert to challenge the officer's testimony, Bass is unable to overcome the presumption that counsel made a strategic decision regarding this issue that fell within the broad range of reasonable professional conduct. *Jones v. State*, 279 Ga. at 855 (2).

(d) Bass claims that his counsel was ineffective because he did not object when the State improperly led its witnesses during direct examination. This claim must fail for the same reason given in Division 3 (c), supra.

(e) Bass claims that his counsel was ineffective because he did not sufficiently cross-examine the officers in order to show the jury that the officers were lying under oath. This claim lacks merit for the

same reasons given in Divisions 2 and 3 (b), supra.

(f) Bass claims that his counsel was ineffective because he allegedly did not conduct any pre-trial investigation of the case or prepare a defense. To the extent that this claim is premised upon counsel's alleged failure to show the jury that the officers were lying under oath, this claim lacks merit for the same reasons as in Divisions 2 and 3 (b), supra. To the extent that Bass contends that counsel did not conduct any investigation prior to trial, did not adequately research the law, and did not present evidence in his defense, these contentions are contradicted by the trial transcript and the rest of the record in this case. There is no merit to this claim.

(g) Bass also contends that his counsel was ineffective for failing to object to the admission of evidence of two of his prior convictions. Bass has not supported this claim with either legal authority or argument, as required by Court of Appeals Rule 25 (c) (2). Therefore, this ineffective assistance claim is deemed abandoned.

4. Bass contends that the trial court erred in denying his second request for a continuance, which would have allowed him the opportunity to obtain missing portions of his trial transcript in order to support his motion for new trial.[1] Bass has abandoned this alleged error, however, by failing to support it with either legal authority or argument, as required by Court of Appeals Rule 25 (c) (2).

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED MAY 17, 2011.

Gary B. Bass, *pro se.*
*Denise D. Fachini, District Attorney, Henry O. Jones III, Assistant District Attorney*, for appellee.

---

[1] The record shows that the trial court granted Bass' first request for a continuance, rescheduling the hearing from June 8, 2010, to July 13, 2010. On July 2, 2010, Bass filed a second request for a continuance, asserting that he needed additional time to subpoena witnesses and to prepare for the hearing. The second request does not mention a need to obtain missing portions of the trial transcript.